UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ILONA HARDING, an individual; LESTER THOMAS HARDING, an individual, all on behalf of themselves and all similarly-situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>DIAMOND RESORTS HOLDINGS, LLC, a Nevada limited liability company; DIAMOND RESORTS INTERNATIONAL, INC., a Delaware corporation; DIAMOND RESORTS U.S. COLLECTION, L.L.C., a Delaware limited liability company; DIAMOND RESORTS INTERNATIONAL MARKETING, INC., a California corporation; DIAMOND RESORTS INTERNATIONAL CLUB, INC., a Florida corporation; DIAMOND RESORTS MANAGEMENT, INC., an Arizona corporation; DIAMOND RESORTS U.S. COLLECTION MEMBERS ASSOCIATION, a Delaware corporation; DIAMOND RESORTS DEVELOPER & SALES HOLDING COMPANY, a Delaware company; DIAMOND RESORTS FINANCIAL SERVICES, INC., a California corporation; and DOES 1 THROUGH 100, INCLUSIVE,<br><br>Defendants. | Case No. 2:17-cv-00248-RFB-VCF<br><br>**ORDER**<br><br>**Defendants' Motion to Compel, Plaintiffs' Motion to Strike, and Plaintiffs' Motion for Leave to File** |

## I. INTRODUCTION

Before the Court is Defendants Diamond Resorts Holdings, LLC; Diamond Resorts International, Inc.; Diamond Resorts U.S. Collection, L.L.C.[1]; Diamond Resorts International Marketing, Inc.; Diamond Resorts International Club, Inc.; Diamond Resorts Management, Inc.;

---

[1] Defendants note that this party was misnamed and suggest a correction, Diamond Resorts U.S. Collection Development, LLC. (ECF No. 18 at 1-2).

Diamond Resorts U.S. Collection Members Association; Diamond Resorts Developer & Sales Holding Company; Diamond Resorts Financial Services, Inc., a California corporation; and Does 1 through 100, Inclusive (collectively, "Diamond")'s Motion to Compel Arbitration and to Stay or Dismiss this Action (ECF No. 18), Plaintiffs Ilona Harding and Lester Harding (collectively, "Plaintiffs")' Motion to Strike Reply (ECF No. 27), and Plaintiffs' Motion for Leave to File Supplemental Exhibit (ECF No. 34). For the reasons stated below, Defendants' Motion to Compel is granted, and Plaintiffs' Motion to Strike and Motion for Leave to File are denied.

## II. BACKGROUND

On January 29, 2017, Plaintiffs filed a Class Action Complaint with Jury Demand against Defendants. (ECF No. 1).[2]

Magistrate Judge Cam Ferenbach granted the parties' Stipulation to extend time on Defendants' response on February 27, 2017. (ECF No. 17). On April 3, 2017, the day Defendants' response was due, Defendants filed the instant Motion to Compel. (ECF No. 18). The same day, Defendants also filed a Motion to Stay, pending the Court's decision on the Motion to Compel. (ECF No. 19).

Plaintiffs filed Responses to the Motion to Compel and Motions to Stay on April 17, 2017. (ECF Nos. 22, 23). Defendants Replied on April 24, 2017. (ECF Nos. 24, 25).

On May 1, 2017, Plaintiffs filed a Motion to Strike the [24] Reply. (ECF No. 27).

On September 14, 2017, Plaintiffs filed a First Motion for Leave to File a Supplemental Exhibit in support of their opposition to the Motion to Compel. (ECF No. 34). Defendants Responded on September 28, 2017 (ECF No. 35) and Plaintiffs Replied on October 9, 2017 (ECF No. 36).

## III. FACTUAL ALLEGATIONS

The Court finds the following facts to have been properly alleged and undisputed.

---

[2] The case was originally assigned to The Honorable Jennifer A. Dorsey. The case was reassigned to this Court on February 27, 2017. (ECF No. 16).

### a. Plaintiffs' Relationship with Defendants

Since December 31, 2012, Plaintiffs have been timeshare owners with Diamond. In the intervening years, Plaintiffs have entered several different timeshare purchase and security agreements ("PSAs") with Diamond. Plaintiffs allege that Diamond uses sales tactics that take advantage of elderly customers.

The most recent PSA Plaintiffs entered, and the PSA that is the main subject of this Motion, was entered on December 12, 2015. Plaintiffs contend that on October 1, 2016, they formulated the intent to opt-out of the arbitration provision as well as other provisions of the PSA. On October 11, 2016, Plaintiffs, through counsel, sent a letter to Diamond giving notice of their wish to opt-out of the December 12, 2015 PSA as well as all previous PSAs.

### b. Arbitration Provision

The first lines of text that appear in the December 12, 2015 PSA state in bold text: "**This is a binding contract by which you agree to purchase an interest in a time-share project. You should examine this statement of your right to revoke this contract within 5 days which is contained elsewhere in this contract.**" (ECF No. 18-1 at 8). Section 18 is titled "**ARBITRATION PROVISION**" and states in relevant part:

- (a) Opt-Out Right **IF PURCHASER DOES NOT WANT THIS ARBITRATION PROVISION TO APPLY, WITHIN 30 DAYS PURCHASER MUST SEND A SIGNED LETTER TO SELLER STATING THAT THE ARBITRATION PROVISION DOES NOT APPLY[.] OPTING OUT OF ARBITRATION WILL NOT AFFECT ANY OTHER PROVISION OF THIS AGREEMENT[.]** (ECF No. 18-1 at 14).
- (b) Arbitration Terms Defined in this Arbitration Provision, the term "**Company Party**" means Seller and/or the Association, their affiliates and the agents, representatives, members, employees, officers and/or directors of such entities, if and to the extent that any Claim is asserted by or against such entity or person[.] "**Bound Parties**" means each Company Party and Purchaser[.] "**Claim**" means any legal claim, dispute or controversy between any Company Party and Purchaser,

including statutory, contract and tort disputes of all kinds and disputes involving requests for declaratory relief, injunctions or other equitable relief[.] However, "Claim" does not include any individual action brought by a Purchaser in small claims court or an equivalent court, unless such action is transferred, removed, or appealed to a different court, and does not include any dispute concerning the validity and effect of Section 18(h) below, the ban on class actions and certain other proceedings (the "**Class Action Ban**")[.] "**Administrator**" means the American Arbitration Association ("AAA"), 1633 Broadway, 10th Floor, New York, NY 10019, http //www adr.org, or if Purchaser so elects in a notice given to Seller (which will serve as notice to each Company Party) within 20 days after a demand for arbitration, the National Arbitration Forum ("NAF"), PO Box 50191, Minneapolis, MN 55405, http //www arb-forum.com[.] (ECF No. 18-1 at 14).

- (c) <u>Arbitration of Claims</u> Unless Purchaser has exercised his or her opt-out right pursuant to Section 18(a), upon the election of Purchaser or any Company Party, any Claim between Purchaser and such Company Party shall be resolved by binding individual (and not class) arbitration[.] Any arbitration will be conducted in accordance with this Arbitration Provision and, to the extent consistent with this Arbitration Provision, the rules of the Administrator in effect at the time the Claim is filed[.] The neutral arbitrator shall be appointed within a specified period of time, which in no event shall be more than 60 days from the administrator's receipt of a written request from a Bound Party to arbitrate the Claim. To the extent this Arbitration Provision conflicts with any other agreement binding the Bound Parties, this Arbitration Provision shall govern[.] (ECF No. 18-1 at 14).

- (d) <u>Fees, Location</u> Company Party to a Claim asserted by Purchaser in good faith or to any Claim asserted by such Company Party will bear all fees of the Administrator or arbitrator in connection with such Claim[.] The Company Party will also bear the reasonable fees and expenses of Purchaser's attorneys if any Claim initiated by Purchaser is resolved in Purchaser's favor[.] If a participatory

arbitration hearing is requested, it will take place in the county where this Agreement was signed or, if the Administrator determines that such location would be unfair to Purchaser, at a location reasonably convenient to Purchaser[.] (ECF No. 18-1 at 14).

- (e) <u>Governing Law</u> This Arbitration Provision shall be governed by the Federal Arbitration Act (the "FAA") and not state arbitration laws, provided that Nevada law shall govern to the extent that state law is relevant under the FAA in determining the enforceability of this Arbitration Provision[.] The arbitrator shall follow applicable substantive laws, statutes of limitations and privilege rules related to any Claim[.] The arbitrator shall award the remedies, if any, that would be available in an individual court proceeding if arbitration had not been elected[.] Upon the timely request of any Bound Party, the arbitrator shall write a brief explanation of the grounds for his or her decision[.] (ECF No. 18-1 at 14).

- (f) <u>Appeal of Arbitrator's Decision</u> Any court with jurisdiction may enter Judgment upon the arbitrator's award[.] The arbitrator's decision will be final and binding, except for any appeal right under the FAA[.] (ECF No. 18-1 at 15).

- (g) <u>Jury Trial Waiver</u> **IF A BOUND PARTY ELECTS TO ARBITRATE A CLAIM, NO BOUND PARTY WILL HAVE THE RIGHT TO PURSUE THAT CLAIM IN COURT OR HAVE A JURY DECIDE THE CLAIM[.]** (ECF No. 18-1 at 15).

- (h) <u>Class Action Ban</u> **NO BOUND PARTY MAY PARTICIPATE IN A CLASS ACTION IN COURT OR IN CLASS-WIDE ARBITRATION, EITHER AS A REPRESENTATIVE, CLASS MEMBER OR OTHERWISE, WITH RESPECT TO ANY CLAIM[.] NO BOUND PARTY MAY PARTICIPATE IN A PRIVATE ATTORNEY GENERAL PROCEEDING IN COURT OR IN ARBITRATION, WITH RESPECT TO ANY CLAIM[.] NO CLAIMS INVOLVING THE BOUND PARTIES MAY BE JOINED OR CONSOLIDATED WITH CLAIMS BY OR AGAINST ANY OTHER**

    **PERSON[.]** Notwithstanding any language in this Arbitration Provision to the contrary, any dispute about the validity or effect of the above Class Action Ban shall be resolved by a court and not an arbitrator or the Administrator[.] (ECF No. 18-1 at 15).

- (i) <u>Survival, Severability</u> This Arbitration Provision shall survive repayment of all amounts owed under this Agreement or the Note, the cancellation of this Agreement, any bankruptcy and any assignment of Seller's rights under this Agreement and/or the Note[.] If any part of this Arbitration Provision is unenforceable (other than the Class Action Ban), the remainder of this Arbitration Provision shall still apply[.] If the Class Action Ban is held to be unenforceable, this Arbitration Provision (other than this sentence) and any other arbitration provision between the Bound Parties shall be null and void in such proceeding[.] (ECF No. 18-1 at 15).

### IV.    LEGAL STANDARD

#### a. Motion to Stay and Compel Arbitration

  The Federal Arbitration Act ("FAA") provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA provides two methods for enforcing arbitration: (1) an order compelling arbitration of a dispute; and (2) a stay of pending litigation raising a dispute referable to arbitration. 9 U.S.C §§ 3, 4.

  "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 218 (1985). The FAA limits the district court's role to determining (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement to arbitrate encompasses the claims at issue. <u>Nguyen v. Barnes & Noble Inc.</u>, 763 F.3d 1171, 1175 (9th Cir. 2014). "The

Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983). Thus, "[t]he standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the Act is phrased in mandatory terms." Republic of Nicar. v. Std. Fruit Co., 937 F.2d 469, 475 (9th Cir. 1991). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (quoting United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960)).

The determination of whether a particular issue should be determined by the arbitrator rather than the court is governed by federal law. Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). However, when deciding whether the parties agreed to arbitrate a certain matter, courts generally apply ordinary state law principles of contract interpretation. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

### b. Dismissing an Arbitrable Action

Section 3 of the FAA provides for a stay of legal proceedings whenever the issues in a case are within the reach of an arbitration agreement. 9 U.S.C. § 3. Although the statutory language supports a mandatory stay, the Ninth Circuit has interpreted this provision to allow a district court to dismiss the action. See Sparling v. Hoffman Const. Co., 864 F.2d 635, 638 (9th Cir. 1988). A request for a stay is not mandatory. Martin Marietta Aluminum, Inc. v. Gen. Elec. Co., 586 F.2d 143, 147 (9th Cir. 1978).

### c. Motion to Strike

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Further, district courts have inherent power to control their own dockets, including the power "to determine what appears in the court's records" and to strike items from the docket to address conduct that is improper but does not warrant dismissal. Ready Transp., Inc. v. AAR Mfg., Inc., 627 F.3d 402, 404-05 (9th Cir. 2010).

## V. DISCUSSION

### a. Motion to Compel Arbitration

Diamond contends that, as Plaintiffs signed the PSA on December 12, 2015, the October 11, 2016 notice of opt-out is untimely pursuant to Section 18 of the PSA and therefore Plaintiffs waived their right to opt-out of arbitration. Diamond argues that there are no other generally available contract defenses Plaintiffs raise which would render the PSA unconscionable or otherwise unenforceable.

Plaintiffs claim that their notice of opt-out was timely. They argue that Section 18(a) of the PSA does not tie the 30-day window for opting out to the date the PSA was executed—instead, the 30-day clock began on the date Plaintiffs decided that they did not want the arbitration provision to apply. Plaintiffs argue that they formulated the intent to opt-out on October 1, 2016, and thus their October 11, 2016 notice of opt-out falls within the 30-day window. Plaintiffs' arguments primarily ask the Court to interpret the terms of Section 18(a). Alternatively, Plaintiffs argue that the Motion should be denied for two reasons: 1) Diamond's proposed interpretation confirms that it omitted essential, material terms, and therefore there was no meeting of the minds; and 2) the arbitration provision is unenforceable because it purports to give the purchaser the exclusive right to select the National Arbitration Forum ("NAF") as the arbitrator, but the NAF has not handled consumer arbitrations since 2009.

The Court agrees with Diamond that Plaintiffs provided notice of opt-out well past 30 days after the date that the December 12, 2015 PSA was signed. The Court further finds that this outside the time frame for opting out pursuant to the PSA. The Court acknowledges that the language of the PSA is not entirely clear; however, the Court is required under Nevada law to seek a "reasonable interpretation" of contract terms and not to interpret a contract in a way that would "render its provisions meaningless." Caldwell v. Consol. Realty & Mgmt. Co., 668 P.2d 284, 287 (Nev. 1983); see also Anvui, LLC v. G.L. Dragon, LLC, 163 P.3d 405, 407 (Nev. 2007) (finding that the intent of the parties may be determined in light of the surrounding circumstances, if their intent is unclear from the contract itself). It is reasonable to interpret the 30-day deadline to be associated with the execution of the contract—the date that the Plaintiffs became "Purchasers"

under the contract. To interpret the contract to allow Plaintiffs or a Purchaser to simply pick the date when the 30 days would start to run would render the time deadline term meaningless. The Court also finds it significant that the Plaintiffs have not asserted in their Declarations that, at the time they signed the PSA, they believed the 30-day opt out clock had not started. Thus, a reasonable interpretation in light of the circumstances is that the opt-out clause was triggered within thirty days of December 12, 2015, the date that the contract became effective.

Additionally, the Court has considered the issue of the National Arbitration Forum's unavailability. Section 18(b) of the PSA provides, in relevant part: "**Administrator**" means the American Arbitration Association ("AAA") . . . or if Purchaser so elects in a notice given to Seller (which will serve as notice to each Company Party) within 20 days after a demand for arbitration, the National Arbitration Forum ("NAF") . . . ." Plaintiffs offer evidence that NAF has not been available as an arbitral forum for consumer disputes since 2009, which Diamond does not dispute.

The FAA provides that the arbitration agreement controls if the method for naming or appointing an arbitrator is specified. 9 U.S.C. § 5. The Court has the authority to appoint an arbitrator only if the arbitration agreement does not specify an arbitrator, or the arbitrator fails to perform. Id. Although there is no dispute that NAF is unavailable as an arbitral forum, Plaintiffs do not contend that AAA is unavailable. As one forum remains, the Court need not exercise its discretion to appoint a substitute arbitrator. Thus, the only questions the Court must resolve is whether the NAF term is integral to the arbitration provision, and if so, whether the term is severable.

In their opposition, Plaintiffs argue that the option to select NAF as an arbitral forum is integral to the arbitration provision because it vests the Purchaser with the exclusive right of election, but the right has become an illusory promise. Plaintiffs contend that Diamond knew or should have known that NAF was an unavailable forum, but provide no support for this contention. Diamond counters that Section 18(i), the severability provision of the PSA, not only allows the choice of forum terms to be severed from the rest of the arbitration provision, but also demonstrates that the neither choice of forum is integral to the arbitration provision.

The Court finds that the part of Section 18(b) that refers to NAF is not integral; even if it

was integral, the term may be severed from the arbitration provision. See Serpa v. Darling, 810 P.2d 778, 782 (Nev. 1991) (finding that severability is a "question of the intention of the parties, to be ascertained from the language employed and the subject-matter of the contract.") (citation and quotation marks omitted). The clause is not integral to the arbitration provision because there still remains the option of arbitration before the AAA. Even if the Court found that the NAF term was integral, it would be severable according to Section 18(i) and the remaining terms of the arbitration provision would nonetheless be enforceable. Furthermore, the Court rejects Plaintiffs' suggestion that Diamond intended to take advantage of the unavailability of NAF. There is no evidence that at the time the PSA was entered, either party knew that NAF was unavailable as a forum or intended to take advantage of that unavailability. Here, the parties may have been mistaken about the availability of one of two arbitral forums, but as long as they entered into the arbitration agreement in good faith, the term including the unavailable forum can properly be severed without rendering the entire arbitration provision unenforceable.

### b. Motion to Strike

Plaintiffs argue that Diamond's Reply brief raised issues that Plaintiffs could not have addressed in their Opposition, and therefore the new arguments should be deemed waived and not be considered by the Court, the Reply should be stricken, or the Court should grant Plaintiffs leave to file a Surreply. Plaintiffs claim that Diamond raised eight new arguments in its Reply. Diamond's position is that the Reply merely responded to the arguments raised in Plaintiff's Response to the Motion to Compel.

The Court does not find that any new arguments are raised in Diamond's Reply, and agrees with Diamond that the Reply contained responses to the points raised in the Opposition – points that Diamond did not have available to them when they filed the initial Motion to Compel Arbitration. Therefore, the Motion to Strike is DENIED. The Court also DENIES the request for leave to file a Surreply.

### c. Motion to File Supplemental Exhibit

Plaintiffs seek to file what is purportedly Diamond's most recent version of its PSA, so that the Court can see the difference in the wording of the current opt-out clause compared to the clause

in Plaintiffs' December 12, 2015 PSA. Plaintiffs also argue that the revised opt-out provision is an "admission against interest" that Diamond knew the opt-out clause in Plaintiffs' PSA was not triggered on the date of execution.

Diamond argues that the Motion should be stricken or denied because the Federal Rules of Civil Procedure do not permit endless briefing, and that the Motion "seeks to reopen arguments long since submitted to this Court." Diamond alternatively contends that the proposed exhibit is irrelevant to the consideration of Diamond's Motion to Compel Arbitration.

The Court finds that the Supplemental Exhibit is irrelevant to the instant issues. The Motion to Compel Arbitration requires the Court to analyze the contract signed by the parties; the proffered PSA was not entered into by Plaintiffs. Further, the Court finds that its interpretation of the December 12, 2015 opt-out clause is not affected by the proffered Exhibit, as the purported June 20, 2017 PSA signed by Diamond and a non-party to the litigation does not aid the Court in its task to interpret the document at issue here.

### d. Dismissal of the Action

The Court has the authority to dismiss an action that is properly suited for arbitration. See Sparling v. Hoffman Const. Co., 864 F.2d 635, 638 (9th Cir. 1988). Based on the analysis above, the Court exercises its discretion and dismisses this action without prejudice.

### VI. CONCLUSION

IT IS ORDERED that Defendants' Motion to Compel Arbitration (ECF No. 18) is GRANTED, and the case is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Strike (ECF No. 27) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Leave to File Supplemental Exhibit (ECF No. 34) is DENIED.

DATED this 7th day of December, 2017.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**